BERNARDINO NEGRÓN VILLAVICENCIO, peticionario y apelante, *v.* VÍCTOR M. GARCÍA, ALCAIDE DE LA CÁRCEL DE DISTRITO DE SAN JUAN, recurrido y apelado.

*Número:* AP-64-28          *Resuelto:* 26 de marzo de 1965

*Manuel Reyes Serrano,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Américo Serra, Procurador General Auxiliar,* abogados del apelado.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

■ La siguiente es una síntesis de lo declarado por el abogado que defendió al peticionario al ser sentenciado por los delitos de portación de armas y alteración de la paz: "Generalmente, cuando los Jueces de Distrito piden a un abogado por cortesía que atienda un caso de oficio, siempre le dicen y siempre lo dice Rolando [se refiere al señor Juez Rolando Martínez] tómense todo el tiempo que necesiten. Yo realmente no recuerdo lo que pasó en el caso, pero tengo por costumbre preguntar si puede pagar abogado. Aparte de eso, siempre pregunto si tiene testigos y averiguo todo lo que pasó y les digo que me declaren a mi como si fueran a hacerlo al Juez . . . . Siempre he tenido por costumbre preparar el caso por completo y especialmente a salir preparado;" que en ese caso se preparó como es su costumbre hacerlo; que los testigos del Pueblo fueron contrainterrogados por él, porque si así no se hiciera "uno haría un papel ridículo"; que en ese caso lo hizo porque fue Juez bastante tiempo y tengo experiencia y sé que hay que hacerlo de rigor; que no recuerda si el peticionario le dijo que tenía testigos adicionales: "no recuerdo nada porque pasa de un año. Uno no se puede recordar. Son tantos los casos que uno atiende en Distrito. En este caso no recuerdo. Quizás tenga idea remota, pero no recuerdo."

Contrainterrogado por el abogado del peticionario, añadió: Que no recuerda los detalles del caso aunque tiene una

idea remota; que el único *récord* del caso lo tiene en la mente porque no se usa tenerlo por escrito, que tampoco se usa tomar notas, "casi nunca se hace. Son casos que cuando uno viene a salir con el testigo y el acusado, ya uno sabe lo que va a hacer"; que en el caso cuya asistencia de abogado se está dilucidando, lo nombraron por cortesía del Tribunal; que en dichos casos (los casos de oficio) se investigan ángulos y el abogado que declara viene preparado porque para eso el Juez dice "tómese el tiempo que necesite"; que en el caso bajo investigación no recordaba lo que había pasado porque: "¡Son tantos que uno atiende!, pero en cuanto a prepararlos, siempre ha sido costumbre mía venir preparado a sala. Interrogo al policía, al acusado, a veces no lo pongo a declarar porque no conviene para conveniencia del acusado;" que los casos (de oficio) "son casos sencillos. Se toma cuenta de la situación y se prepara al testigo;" que a veces no tienen testigos (fuera del testimonio del acusado, claro está) ; que no podría decir cuanto tiempo estuvo preparando el caso con el acusado, que eso depende de las circunstancias "pero esos casos sencillos se terminan en 10 minutos. Por la experiencia que uno tiene, se da cuenta lo que le van a preguntar y como tiene que portarse ante el Tribunal"; que en cuanto a si el acusado (aquí peticionario) tenía testigo o no, no lo recuerda o no lo tenía, "eso es tan remoto"; que a veces lo dicen y a veces no (en cuanto a si tienen testigos) pero en este caso en particular no lo recuerda.

Interrogado por el señor Juez que presidió el proceso, declaró que llevaba 30 años en el ejercicio de su profesión; que no existe la posibilidad, en el caso objeto de esta revisión específicamente, que el abogado declarante entrara en el proceso para representar al acusado, sin tan siquiera haberle preguntado sobre lo que se trataba "porque la costumbre es que el Juez nos da el tiempo que uno crea necesario para preparar la prueba y no puedo entrar sin preparar la prueba"; que si no se hubiese sentido preparado, no hubiese

entrado ya "que cuando es necesario más tiempo, uno se lo explica al Juez y pide tiempo adicional para preparar el caso". "Yo comparezco preparado cuando voy a defender un caso de oficio."

Le somos deudores al abogado de oficio que defendió al peticionario en el juicio en que fuera condenado por un delito de portar armas y una alteración a la paz, de una descripción bastante exacta de la angustiosa rutina mediante la cual se dispone en los Tribunales nuestros de uno de los derechos constitucionales más efectivos que tiene un hombre para sobrevivir dentro de una democracia. Hay que comprender la limitación moral que le causa a un hombre de bien el antecedente penal para darse cuenta del riesgo que representa esta rutina del juicio *pro forma*.

El caso todavía se torna más agrio cuando se examina la declaración prestada por el peticionario en la vista del recurso de hábeas corpus. El peticionario declaró que él tenía otro abogado pero que el día del juicio no vino su abogado que entonces le dijo el Juez que presidía el proceso en los casos de portar armas y alteración de la paz, que le nombrarían un abogado de oficio; que nombrado el abogado de oficio pasaron a un cuarto adyacente y el abogado le preguntó al peticionario entonces acusado, si tenía dinero; que el peticionario le contestó que no, porque el peticionario tenía abogado; que eso fue un receso de 4 a 5 minutos y el peticionario le dijo además al abogado de oficio que si se podía, el peticionario cogería un poco más de tiempo a ver si podía mandar a buscar el dinero; que "entonces no se podía y en eso terminó el receso de 4 a 5 minutos y salimos a la sala"; que el peticionario no tuvo tiempo para explicarle al abogado de oficio cómo ocurrieron los hechos; que el abogado de oficio le preguntó que si tenía testigos y le contestó que tenía uno pero no solicitó de su abogado que lo citara; que al ir a la Sala declararon únicamente el policía y el peticionario.

Contrainterrogado por el señor Fiscal, el peticionario aña-
dió que se había enterado cuando se iba a celebrar el juicio
como un mes de la fecha de la vista; que el peticionario habló
con su anterior abogado como dos semanas antes de la cele-
bración de la vista; que en esa fecha todavía no le había pa-
gado aunque: "habíamos hablado, era cuestión de familia-
res, no había dinero por el medio"; que cuando le asignaron
al abogado de oficio no le explicó a dicho abogado de oficio los
pormenores del caso porque "no me dio tiempo. Luego que
salimos de la oficina vine a juicio"; que no le explicó al
Juez (¿los pormenores del caso?) porque el peticionario
sabía que "el caso me había sido suspendido 5 o 6 veces an-
teriormente", a veces porque el policía no iba y había desa-
cato y dos veces porque el peticionario no fue, en una mandó
certificado médico porque estaba enfermo y la otra vez no fue
porque "tenía miedo. Llegué al Tribunal y el juicio lo suspen-
dieron para las 2:00 P.M. Entonces a las 2:00 P.M. no fuí";
que su anterior abogado, con relación al caso del peticionario,
fue dos o tres veces, y mientras el peticionario estuviera
presente estuvo dos veces; que el testigo que él tenía, para
la fecha de la vista vivía en la Calle Manuel Henríquez, en
Palo Seco; que no le pidió al Tribunal que lo citara porque
"había demasiada gente y yo tenía un poco de miedo", que
tampoco le pidió al abogado de oficio que solicitara la pos-
posición de la vista para que le citaran el testigo; que su
abogado no contrainterrogó al policía; que no recuerda si el
Juez le hizo algunas preguntas al policía porque hacía tanto
tiempo . . . . Hasta aquí la prueba más importante del caso.

■■■■ El peticionario había contratado los servicios del
anterior abogado para que lo defendiera en el juicio, le avisó
dos semanas antes de celebrarse la vista, pero el anterior
abogado no se presentó el día de la vista del caso. Parece que
la costumbre es nombrar un abogado de oficio en todos los
casos en que no comparece el abogado contratado por el acu-
sado. No creemos que ésta sea la práctica más aconsejable.

La mejor práctica sería requerir formalmente del abogado contratado por el acusado que preste los servicios profesionales satisfactorios que se esperan del él, de acuerdo con las normas éticas de nuestra profesión, si necesario haciendo uso del poder coercitivo del Tribunal para lograr su labor de justicia.

■ Lo que constituye una debida asistencia de abogado es mejor un análisis de las circunstancias de cada caso, que una aplicación de ciertas reglas instrumentales sobre el perjuicio o al servicio mínimos. Es indudable que en este caso, el cuadro de indefensión lastima el más rudimentario concepto que se pueda tener de la igual protección de las leyes.

*Debe revocarse la sentencia y procederse a la celebración de un nuevo juicio con verdadera asistencia legal y con la protección que los tribunales estamos en la obligación de suplirle a un acusado para su debida defensa.*